Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiff*
*FoxMind Canada Enterprises Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOXMIND CANADA ENTERPRISES LTD., <br><br> *Plaintiff* <br><br> v. <br><br> BEIJING HUI XIN ZHI XIANG SHANGMAO YOUXIAN GONGSI, DIRTYPIGS, DONGGUAN JINXIUYUNHUADIANZISHANGWUYOUXIAN GONGSI, DONGGUANSHI SUQIANMEI DIANZISHANGWU YOUXIANGONGSI, DONGGUANSHISANGUKEJIYOUXIANGONGS I, FANGNUO HARDWARE PROCESSING SHOP, FOSHAN SHINGHOYUET, GUANGZHOU HUIYUN TRADING, HUANJIANG XINTONG HARDWARE STORE, NINGBO HUAZHIRUI ELECTRONIC COMMERCE, SHEN JINXIAN MAO YIYOUXIAN COMPANY, SHENZHEN FEISISUIKE TECHNOLOGY, SHENZHEN LVPENGCHENG TECHNOLOGY, SHENZHEN XINGHUO DIANZISHANGWUYOUXIANGONGSI, SHENZHEN XUNZHE TECHOLOGY, SHENZHENSHI YUHAITENG KEJI YOUXIANGONGSI, SHENZHENSHIAORUIDIANZISHANGWUYOU XIANGONGSI, SHENZHENSHIYIJIUMAOYIYOUXIANGONGSI ,WUHANXINXUSHENGDIANZISHANGWUYO UXIANGONGSI, YIWEISAI (SHENZHEN) ELECTRONIC, YIWU SHI QINGTONG DIANZISHANGWU CO and ZHANGZHOU YIYE | CIVIL ACTION No. <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR 1) A TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING MERCHANT STOREFRONTS AND DEFENDANTS' ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; 4) ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE AND 5) ORDER AUTHORIZING EXPEDITED DISCOVERY** <br><br> **FILED UNDER SEAL** |

QIANFAN ELECTRONIC COMMERCE,

*Defendants*

# I.   TABLE OF CONTENTS

I.   TABLE OF CONTENTS ............................................................................................... i

I.   INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF RELEVANT FACTS ................................................................. 2

III.   ARGUMENT .............................................................................................................. 3

    A.   **THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ...................................................................................... 3**

        1.   Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1) ..................................................................... 3

        2.   Exercising Personal Jurisdiction Over Defendants Comports with Due Process ................................................................... 8

    B.   **PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION .................. 9**

        1.   Plaintiff is Likely to Prevail on the Merits of Its Lanham Act Claims ................................................................................... 11

        2.   Plaintiff is Likely to Prevail on Its State Law Claims ............... 12

        3.   Plaintiff is Entitled to a Presumption of Irreparable Harm ....... 12

        4.   The Balance of Hardships Favors Plaintiff ................................ 13

        5.   Enjoining Defendants from Using the Pop It Mark Will Serve the Public Interest ...................................................................... 13

    C.   **PLAINTIFF IS ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' MERCHANT STOREFRONTS ........................... 14**

        1.   Defendants' Assets Must be Frozen ......................................... 14

        2.   Defendants' User Accounts and Merchant Storefronts Must be Frozen ................................................................................... 16

    D.   **PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS ..................................................................... 16**

        1.   Regardless of Whether the Hague is Applicable, Alternative Service via Electronic Means is Necessary and Proper Under the Circumstances ................................................................. 17

            a)   Service on Defendants is Permissible Under Fed. R. Civ. P. 4(f)(3) ............................................................... 17

b)     Service is also Permissible Under Fed. R. Civ. P. 4(f)(2)(A) ....... 23

2.     Based on Plaintiff's Diligent Investigation, The Ability for Defendants to Receive Notice of this Lawsuit at Their Physical Addresses is Questionable at Best ........................................................... 25

3.     Service by Electronic Means Comports with Due Process...................... 26

**E.     PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY ..................... 28**

**F.     PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE ........................................................... 28**

IV.     CONCLUSION............................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14 Civ. 1112 (VSB), 2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018) .................................................. 21, 25, 26

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457 (S.D.N.Y. Dec. 28, 1994). .................................. 28

*Aircraft Engine Lease Finance, Inc. v. Plus Ultra Lineas Aereas, S.A.*, 21 Civ. 1758, 2021 WL 6621578 (S.D.N.Y. Apr. 23, 2021) .................................................................. 20

*Allstar Marketing Group, LLC v. 545756338, et al.*, 19-cv-4209-KPF (S.D.N.Y. May 9, 2019) ...................................................................................................................... 6

*Allstar Marketing Group, LLC v. activate2011store, et al.*, 19-cv-4204-KPF (S.D.N.Y. May 9, 2019) ............................................................................................................ 5

*Allstar Marketing Group, LLC v. Alice Wonder Household (Shanghai) Co., Ltd.*, 19-cv-4208-KPF (S.D.N.Y. May 9, 2019) ........................................................................ 6

*Allstar Marketing Group, LLC v. Learns babyshop, et al.*, 19-cv-4211-KPF (S.D.N.Y. May 9, 2019) ............................................................................................................ 6

*Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465 (D. Mass. 2020) .............. 22

*Appel v. Hayut*, No. 20 Civ. 6265 (JPC), 2020 WL 7211212 (S.D.N.Y. Dec. 7, 2020).............. 23

*Asia Cube Energy Holdings, LTD v. Inno Energy Tech Co.*, No. 20-cv-6203 (AJN), 2020 U.S. Dist. LEXIS 148012 (S.D.N.Y. Aug. 17, 2020) ...................................................... 20

*Audiovox Corp v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656 (S.D.N.Y. Jul. 26, 2012) ............................................................................................................................ 6

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) ...................................................... 28

*Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733 (S.D.N.Y. Oct. 8, 2010) ................................................................................ 14

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ............................................ 3, 4, 8, 9

*Best Van Lines, Inc. v. Walker*, No. 03 Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830 (S.D.N.Y. May 4, 2004)................................................................................................ 8

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) .................................................................. 7

*Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184 (S.D.N.Y. 2016) ........................ 13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (U.S. 1985)........................................................ 9

*Calder v. Jones*, 465 U.S. 783 (1984)............................................................................................ 9

*Cartier v. Seah LLC*, 598 F. Supp. 2d 422 (S.D.N.Y. 2009) ............................................ 6

*Chanel, Inc. v. Handbagstore*, No. 20-CV-62121-RUIZ/STRAUSS, 2021 WL 3060329
    (S.D. Fla. June 30, 2021) ..................................................................................... 21

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010)............................. 4, 5, 6

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000)........................................ 4

*City of N.Y. v. Lopez*, No. 21 CV 7862 (JPO), 2021 U.S. Dist. LEXIS 243449 (S.D.N.Y.
    Dec. 21, 2021)..................................................................................................... 13

*Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076 (S.D.N.Y.
    June 12, 2015).................................................................................................... 15

*Dev. Specialists, Inc. v. Li (In re Coudert Bros. LLP)*, No. 16-CV-8237 (KMK), 2017 WL
    1944162 (S.D.N.Y. May 9, 2017).......................................................................... 23

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996)........................................................ 28

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008)................... 3

*EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB),2012 U.S. Dist.
    LEXIS 78088 (E.D.N.Y. June 4, 2012) ....................................................................... 5, 6, 7

*Equipav S.A. Pavimentação, Engenharia e Comercia Ltda. v. Bertin*, No. 22-CV-04594
    (PGG), 2022 WL 2758417 (S.D.N.Y. July 14, 2022) ................................................ 19, 21

*Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168 (2d Cir. 2000)).......................... 11

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368 (S.D.N.Y. 2010) .......... 11, 12

*FoxMind Canada Enterprises Ltd. v. Abctec, et al.*, 21-cv-5146 (KPF) (S.D.N.Y. July 14,
    2022) ..................................................................................................................... 19

*Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 (S.D.N.Y. May 1,
    2016) ........................................................................................................................ 5

*Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323 (E.D.N.Y. 2021)......................................... 22

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014)......................................................... 14

*Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ...................................... 4, 16

*Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'n Identified on
    Schedule A*, No. 20 C 4806, 2021 WL 1222783 (N.D. Ill. Apr. 1, 2021)................. 21, 24

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000) .................... 6

*In re Bibox Grp. Holdings Sec. Litig.*, No. 20cv2807(DLC), 2020 WL 4586819 (S.D.N.Y.
    Aug. 10, 2020) .................................................................................................... 22

*In re Criminal Contempt Proceedings Against Gerald Crawford, Michael Warren*, 329
    F.3d 131 (2d Cir. 2003).......................................................................................... 27

iv

*In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262 (S.D.N.Y. 2012) .................................... 20

*In re Vuitton et Fils, S.A.*, 606 F.2d (2d Cir. 1979)..................................................................... 1

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ..................................................................... 3

*JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF (S.D.N.Y. Feb. 21, 2018) ............ 1

*Kelly Toys Holdings, LLC v. Top Dep't Store*, 2022 U.S. Dist. LEXIS 154175 (S.D.N.Y.
     Aug. 26, 2022) ..................................................................................................................... 25

*Lechner v. Marco-Domo Intnationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005
     U.S. Dist. LEXIS 4022 (S.D.N.Y. Mar. 10, 2005) .............................................................. 8

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013).................................................. 3

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016
     U.S. Dist. LEXIS 89149 (S.D.N.Y. July 8, 2016) .............................................................. 5

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224 (2d
     Cir. 1992) ........................................................................................................................... 11

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532 (2d
     Cir. 2005) ........................................................................................................................... 11

*Luxottica Grp. S.p.A. v. P'ships, et al.*, 18 Civ. 2188, 2019 WL 2357011 (N.D. Ill. June 4,
     2019) ................................................................................................................................... 22

*Luxottica Grp. S.p.A. v. P'ships, et al.*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) ........................... 22

*MacLean—Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 WL 5100414
     (N.D. Ill. Dec. 1, 2008) ...................................................................................................... 21

*Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-JSR (S.D.N.Y. Sept. 26, 2018) ........................... 29

*Mattel, Inc. v. Animefunstore, et al.*, 18 Civ. 8824 (LAP) (Dkt. 81) (S.D.N.Y. May 1,
     2020) ................................................................................................................................... 27

*McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018) ......... 6

*Milliken v. Meyer*, 311 U.S. 457 (1940) ....................................................................................... 9

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013) .............. 12

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ....... 13

*NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790 (N.D. Ill. 2021) ...... 20, 21

*North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist LEXIS 14226 (S.D.N.Y.
     Mar. 30, 2006)..................................................................................................................... 14

*Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 WL 2633317 (N.D. Ill. June 25, 2021)........... 21, 27

*Pearson Educ. Inc. v. Doe 1*, 18-CV-7380, 2019 WL 6498305 (S.D.N.Y. Dec. 2, 2019) .......... 26

*Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988 (GBD), 2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 12, 2007) ................................................................................ 25

*Polaroid Corp. v. Polarad Elecs. Corp*. 287 F.2d 492 (2d Cir. 1961) ......................................... 11

*Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, 2017 WL 11509784 (S.D.N.Y. 2020) ................................................................................................. 21, 27

*Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790 (S.D.N.Y. Sep. 24, 2013) ......................................................................... 12

*Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ........................................... 23

*Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249 (E.D.N.Y. Mar. 11, 2011) ................................................................................................................... 8

*Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017) ................................................................ 29

*SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 WL 361739 (S.D.N.Y. Feb. 8, 2009) ........... 20

*ShelterZoom Corp. v. Goroshevsky*, 19-cv-10162 (AJN), 2020 WL 4252722 (S.D.N.Y. July 23, 2020) ..................................................................................................... 22

*Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006) ................ 3

*Strabala v. Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016) ...................................................................... 20

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) ......... 18, 21, 22, 27

*The Neck Hammock, Inc v. Danezen.com*, 2020 WL 6364598 (D. Utah Oct. 29, 2020) ............ 22

*Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489 (S.D.N.Y. 2002) ..................... 5

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ........................................................ 11

*Trs. of Columbia Univ. v. Encyclopaedia Iranica Found.*, 2020 U.S. Dist. LEXIS 155031 (S.D.N.Y. Aug. 26, 2020) ...................................................................................... 27

*Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702 (N.D. Cal. Jan. 26, 2021) ..................... 13

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ........................................ 22

*Warner Bros. Entm't Inc. v. Doe*, No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014) .................................................................................. 15

*Water Splash, Inc. v. Menon,* 137 S. Ct. 1504 (2017) .......................................................... 21, 22

*Zanghi v. Ritella*, 2020 WL 589409 (S.D.N.Y. Feb. 5, 2020) .................................................... 26

**Statutes**

15 U.S.C. § 1057(b) ................................................................................................................ 11

15 U.S.C. § 1116(d)(1)(a) ........................................................................................ 9, 10

15 U.S.C. § 1117(a) ..................................................................................................... 14

Consolidated Appropriations Act, 2021, Pub. L. 116-260 ......................................... 12

Fed R. Civ. P. 4(d)(1)............................................................................................ 17, 26

Fed. R. Civ. P. 26(d)(1)................................................................................................ 28

Fed. R. Civ. P. 4 ..................................................................................................... 8, 17

Fed. R. Civ. P. 4(f)(3) .................................................................................................. 20

Fed. R. Civ. P. 65(b) ..................................................................................................... 9

Fed. R. Civ. P. 65(b)(2) ................................................................................................ 27

N.Y. C.P.L.R. § 302 ....................................................................................................... 3

**Other Authorities**

Fed. R. Civ. P. 4, Advisory Committee Notes, 1993 amendments............................. 19

## GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiff or FoxMind** | FoxMind Canada Enterprises Ltd. |
| **Defendants** | Beijing Hui Xin Zhi Xiang Shangmao Youxian Gongsi, Dirtypigs, Dongguan Jinxiuyunhuadianzishangwuyouxiangongsi, Dongguanshi Suqianmei Dianzishangwu Youxiangongsi, Dongguanshisangukejiyouxiangongsi, Fangnuo Hardware Processing Shop, Foshan ShingHoYuet, Guangzhou Huiyun Trading, Huanjiang Xintong Hardware Store, Ningbo Huazhirui Electronic Commerce, Shen Jinxian Mao Yiyouxian Company, Shenzhen Feisisuike Technology, Shenzhen Lvpengcheng Technology, Shenzhen Xinghuo Dianzishangwuyouxiangongsi, Shenzhen Xunzhe Techology, Shenzhenshi Yuhaiteng Keji Youxiangongsi, Shenzhenshiaoruidianzishangwuyouxiangongsi, Shenzhenshiyijiumaoyiyouxiangongsi, Wuhanxinxushengdianzishangwuyouxiangongsi, Yiweisai (Shenzhen) Electronic, Yiwu Shi Qingtong Dianzishangwu Co and Zhangzhou Yiye Qianfan Electronic Commerce |
| **Fruugo** | Fruugo.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Capon Dec.** | Declaration of David Capon in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of |

|  | Plaintiff's Application |
|---|---|
| **Pop It Products** | A soothing tactile toy and smart bubble popping game designed to stimulate children's senses and develop logic and reasoning skills |
| **Pop It Mark** | U.S. Trademark Registration No. 6,183,005 for "POP IT!" for goods in Class 28 |
| **FoxMind Products** | A variety of toys and games that offer mind stimulating fun while developing reasoning skills, spatial logic and other skills associated with science, technology, engineering, and math (STEM) |
| **Counterfeit Products** | Products bearing or used in connection with the Pop It Mark, and/or products in packaging and/or containing labels bearing the Pop It Mark, and/or bearing or used in connection with marks that are confusingly similar to the Pop It Mark and/or products that are identical or confusingly similar to the Pop It Mark |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Fruugo, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service** | Online platforms, including, without limitation, those |

| **Providers** | owned and operated, directly or indirectly by Fruugo, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |
|---|---|

## I.    <u>INTRODUCTION</u>

Plaintiff submits this memorandum of law in support of its *ex parte* Application in light of Defendants' willful offering for sale and/or sales of Counterfeit Products.[1]  Courts grant *ex parte* applications for relief in similar matters[2] and Plaintiff requests that the Court grant its Application.

Fruugo is an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically those in the U.S., including New York. (Nastasi Dec., ¶ 3). Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their Merchant Storefronts. (Capon Dec., ¶¶ 21-22; Nastasi Dec., ¶¶ 3, 12-13, Ex. A). Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and market, distribute and ship such products to consumers throughout the world, including New York. (Capon Dec., ¶ 22; Nastasi Dec., ¶¶ 17-18, Ex. A). Third-party merchants, like Defendants, often use evasive tactics like aliases, and false or incomplete addresses and identifying information to conceal their identities and avoid detection. (Nastasi Dec., ¶¶ 7-10).  In fact, most of Defendants' Merchant Storefronts are devoid of any or contain incomplete information regarding Defendants' true identities, locations and contact information, making it virtually impossible for Plaintiff to obtain such information independently. (Nastasi Dec., ¶ 28).

Without Plaintiff's authorization or consent, Defendants were and/or currently are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying,

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

[2] *See In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief); *see also, e.g., JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018).

offering for sale and/or selling Counterfeit Products to consumers located in the U.S., including New York, through their Merchant Storefronts. (Capon Dec., ¶¶ 21-22; Nastasi Dec., ¶¶ 3, 13, Ex. A).  Defendants' actions have caused and will continue to cause irreparable harm to Plaintiff's goodwill and reputation as well as to the unassuming consumers who will continue to believe that the Counterfeit Products are authorized, sponsored, approved, endorsed and/or licensed by Plaintiff, when, in fact, they are not. (Capon Dec., ¶ 26).  Plaintiff's request for *ex parte* relief is particularly necessary because if Defendants receive notice of this lawsuit, it is highly likely that they will transfer, conceal and/or destroy the Counterfeit Products, the means of making or obtaining such Counterfeit Products, business records, and any and all other evidence relating to their infringing activities. (Nastasi Dec., ¶ 10). Moreover, they will likely hide or dispose of Defendants' Assets. *Id.*  In light of the foregoing, and considering that it typically takes noticed Financial Institutions and/or Third Party Service Providers a minimum of five (5) days to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts, Plaintiff respectfully requests that the Court order bifurcated service specifically allowing enough time for the Financial Institutions and/or Third Party Service Providers to comply with the TRO before ordering service on Defendants.

## II.    STATEMENT OF RELEVANT FACTS

The facts are contained in the Nastasi Dec. and Capon Dec., plus accompanying exhibits.  *See* Capon Dec.; Nastasi Dec.; Complaint, Exs. A-D.  In the interest of brevity, any factual discussion is contained in the legal analysis below.[3]

---

[3] Although Plaintiff seeks multiple forms of relief, in the interest of brevity and with respect for the Individual Rules and Practices in Civil Cases of each District Judge, Plaintiff respectfully submits this memorandum of law in support of its Application.  Plaintiff will promptly provide supplemental briefing on any issue should the Court request it.

### III.     ARGUMENT

### A.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Determining personal jurisdiction over a foreign defendant in a federal question case requires a two-step inquiry.  First, courts must look to the law of the forum state to determine whether personal jurisdiction will lie. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)).  Second, if jurisdiction lies, the court then considers whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution.  *See id.*; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  As alleged herein, Defendants' unlawful counterfeiting and infringing activities subject them to long-arm jurisdiction in New York under N.Y. C.P.L.R. § 302(a)(1).[4]  Furthermore, New York's exercise of jurisdiction over Defendants thereunder comports with due process.

### 1.  Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)

Under § 302(a)(1), there are two requirements that must be met to establish personal jurisdiction: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci*, 732 F.3d at 168 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).  In applying the test for the "transacts business" prong of § 302(a)(1), "New York decisions … tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard," ergo, "a defendant need not be physically present in New York to transact business there within the meaning of [this first prong]," so long as the defendant has engaged in "purposeful activity," for example, "some act by which the defendant purposefully avails itself of the privilege of conducting

---

[4] Plaintiff respectfully submits that Defendants are also subject to jurisdiction under § 302(a)(3).  *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 470 (S.D.N.Y. 2008).  However, this alternative analysis is omitted for brevity.  Plaintiff will promptly provide supplemental briefing and/or oral argument on any issue should the Court request it.

activities within the forum State, thus invoking the benefits and protections of its laws." *Chloe v. Queen Bee of Beverly Hills*, *LLC*, 616 F.3d 158, 169-71 (2d Cir. 2010) (quoting *Best Van Lines, Inc.*, 490 F.3d at 246-247) (internal quotation marks omitted).  The second prong of § 302(a)(1) requires an "articulable nexus or substantial relationship between the business transaction and the claim asserted," however, "a causal relationship between the business transaction and the claim asserted" is not required. *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (citations omitted) (internal citations omitted) (internal quotation marks omitted).  Rather, it is sufficient that "the latter is not completely unmoored from the former."  *Id*.

In determining whether a party has "transacted business," New York courts must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state. *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).  Whether the exercise of personal jurisdiction is permissible in the context of Internet activity is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.*  Courts in this Circuit have regularly conferred personal jurisdiction on a given defendant based on that defendant's operation of a fully interactive website through which consumers can access the site from anywhere and purchase products, as is the case with Defendants' User Accounts and Merchant Storefronts, and allow for customers all over the world to communicate with Defendants and view and purchase products, including Counterfeit Products, as demonstrated by the checkout pages completed by Epstein Drangel and Epstein Drangel's purchase of Counterfeit Products from a sampling of Defendants.  *See* Nastasi Dec., ¶¶ 17-19, Ex. A; *see also Chloe*, 616 F.3d at 170.

This Circuit has exercised jurisdiction over defendants under § 302(a)(1) where such defendants regularly offer for sale and sell goods through online marketplaces, "even though

Defendants do not control their [] 'storefront' or its interactivity to the same extent that they control their own highly interactive website." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 U.S. Dist. LEXIS 89149 *7 (S.D.N.Y. July 8, 2016) (quoting *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB), 2012 U.S. Dist. LEXIS 78088 *8 (E.D.N.Y. June 4, 2012).[5]  Jurisdiction is proper "for internet sellers who use an internet storefront like Amazon," when the Internet sellers are "commercial vendors who use it 'as a means for establishing regular business with a remote forum.'" *Id*. at *8.  In *Lifeguard Licensing Corp.*, Judge Schofield held that a "website that does more than provide information about a product and allows customers to purchase goods online, is a 'highly interactive website,' which may provide a basis for personal jurisdiction under CPLR § 302(a)." *Id*. at *7. (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) and *Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 at *3 (S.D.N.Y. May 1, 2016) (holding that interactive commercial websites provides support for jurisdiction pursuant to CPLR § 302(a)(1))). Moreover, "[r]egularly offering and selling goods via an online marketplace such as Amazon.com can provide a basis for personal jurisdiction under CPLR § 302(a), even though Defendants do not control their Amazon.com 'storefront' or its interactivity to the same extent that they control their own highly interactive website." *Id*. at *8.  If a defendant

> wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [that defendant] to personal jurisdiction here.  If [a defendant] does not want its website to subject it to personal jurisdiction here, it is free to set up a passive website that does not enable [that defendant] to transact business in New York.

*Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002).[6]

---

[5] *See also supra* fn. 4.
[6] This Court has repeatedly found personal jurisdiction over defendants based in China who are operating Merchant Storefronts on online marketplace platforms, such as Alibaba, AliExpress, Wish and eBay. *See*, *e.g.*, *Allstar Marketing Group, LLC v. activate2011store, et al.*, 19-cv-4204-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v.*

In *EnviroCare Techs.*, the court held that "if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction."  2012 U.S. Dist. LEXIS 78088 at *9 (citing *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant."))  Similarly, in *Chloe, supra*, the Second Circuit found that while the single act of shipping a counterfeit product might be sufficient to subject him to the jurisdiction of a New York court, it did not need to delve into such an inquiry as the defendant "operated a highly interactive website offering [counterfeit products] for sale to New York consumers."  *Chloe*, 616 F.3d 158, 170.

Courts in this Circuit have found that "[t]he offering for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under N.Y. CPLR § 302(a), subd. 1, 2 and 3."  *Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009).  In *McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018), this Court found personal jurisdiction where the defendant's website was "interactive" and allowed a buyer to submit an order online.  *McGraw-Hill* cited to *Audiovox Corp v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656 at *3 (S.D.N.Y. Jul. 26, 2012) for the proposition that "if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction." *See also*, *Hsin Ten Enter.*, 138 F. Supp. 2d 449, 456

---

*Alice Wonder Household (Shanghai) Co., Ltd.*, 19-cv-4208-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. 545756338, et al.*, 19-cv-4209-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. Learns babyshop, et al.*, 19-cv-4211-KPF (S.D.N.Y. May 9, 2019).

("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.").

Here, Defendants operate interactive Merchant Storefronts on Fruugo, allowing New York consumers to inquire and communicate with Defendants, purchase goods, including Counterfeit Products, by and through Defendants' listings, and upon completion of a sale, ship goods to New York. The fact that Defendants have chosen to open their respective User Accounts for the purpose of selling Counterfeit Products through their Merchant Storefronts alone supports a finding that Defendants have intentionally used Fruugo "as a means for establishing regular business with a remote forum." *EnviroCare Techs., LLC*, 2012 U.S. Dist. LEXIS 78088 at \*10 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008)). Moreover, the fact that Defendants are offering the Counterfeit Products through their Merchant Storefronts coupled with the fact that most of their User Accounts reflect multiple sales to consumers across the world, including repeat sales to consumers in the U.S., confirms that Defendants are sophisticated sellers operating commercial businesses through Fruugo, such that they are subject to jurisdiction. *Id.* at \*10.

It is highly likely that Defendants have shipped Counterfeit Products to consumers in New York based on the following: 1) Epstein Drangel completed a checkout page for an order of Counterfeit Products from each and every Defendant through an account associated with the New York Address and/or provided the New York Address as the shipping address, 2) Epstein Drangel purchased Counterfeit Products from a representative sampling of Defendants to New York, 3) and all Defendants accept payment in U.S. dollars. (Nastasi Dec., ¶¶ 17-19, Ex. A).

Nevertheless, whether a defendant physically shipped Counterfeit Products into New York is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular

defendant has transacted business in the forum state under § 302(a)(1). *Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249, at * 6 (E.D.N.Y. Mar. 11, 2011).  Plaintiff and Plaintiff's counsel have viewed Defendants' Counterfeit Products via their online User Accounts and Merchant Storefronts. (Capon Dec., ¶ 22; Nastasi Dec., ¶ 13). Epstein Drangel then completed checkout pages for Counterfeit Products by providing the New York Address as the shipping address.[7] (Nastasi Dec., ¶¶ 17-19, Ex. A).    Further, Epstein Drangel purchased Counterfeit Products from a representative sampling of Defendants. *Id.*   Thus, Defendants' sophisticated commercial operations, specifically including their offering for sale and/or selling of Counterfeit Products through their highly interactive User Accounts and Merchant Storefronts on Fruugo, Epstein Drangel's completion of checkout pages with the New York Address, Epstein Drangel's purchase of Counterfeit Products, along with Defendants' own representations on their Merchant Storefronts that they ship Counterfeit Products to the U.S., including New York, unequivocally establishes that Defendants conduct business within this District and the claims in this suit arise from Defendants' business dealings and transactions with consumers in New York.[8] *Id.*

### 2.   Exercising Personal Jurisdiction Over Defendants Comports with Due Process

Asserting personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts … such that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v.*

---

[7] Under case law of the Second Circuit, when analyzing personal jurisdiction in the Internet context, "traditional statutory and constitutional principles remain the touchstone of the inquiry", and while a website's interactivity, "may be useful" for analyzing personal jurisdiction 'insofar as it helps to decide whether the defendant 'transacts any business' in New York,'" … "it does not amount to a separate framework for analyzing internet-based jurisdiction." *Best Van Lines, Inc.*, 490 F.3d at 252 (quoting *Best Van Lines, Inc. v. Walker*, No. 03 Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830, at *9 (S.D.N.Y. May 4, 2004) (internal citation omitted)).

[8] Alternatively, Plaintiff respectfully submits that the Court has jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2), which "provides for jurisdiction over a defendant if a claim arises under federal law, if the defendant is not subject to jurisdiction of the courts of general jurisdiction of any state, and if the exercise of jurisdiction is consistent with the Constitution and laws of the United States." *Lechner v. Marco-Domo Internationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022, *8 (S.D.N.Y. Mar. 10, 2005).

*Jones*, 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)).  Defendants intentionally directed activity towards the New York market, thereby purposefully availing themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S. 1985); *Best Van Lines, Inc.*, 490 F.3d at 243; *see also* Nastasi Dec., ¶¶ 17-19, Ex. A.  Moreover, "as a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008).  Accordingly, Plaintiff respectfully submits that this Court has personal jurisdiction over Defendants in this action.

### B.  PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Here, an *ex parte* order is essential to prevent immediate and irreparable injury to Plaintiff. A temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b).  Section 34 of the Lanham Act expressly authorizes this Court to issue *ex parte* restraining orders "with respect to a violation [of the Act] that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods." 15 U.S.C. § 1116(d)(1)(a).[9]

Once a violation of the Lanham Act is demonstrated, the issuance of an *ex parte* order is appropriate upon showing that: (i) the plaintiff will provide adequate security; (ii) any order other

---

[9] Congress' purpose for enacting such *ex parte* remedies was to ensure that courts were able to effectively exercise their jurisdiction in counterfeiting cases and to prevent counterfeiters given prior notice from disappearing or quickly disposing of infringing inventory or records relating to their counterfeiting and illegal actions.  *See* Senate-House Joint Explanatory Statement on trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984).

than an *ex parte* order is not adequate to achieve the purposes of 15 U.S.C. § 1114; (iii) the plaintiff has not publicized the requested *ex parte* order; (iv) the plaintiff is likely to succeed on showing that defendants are using counterfeit marks; (v) an immediate and irreparable injury will occur if such *ex parte* order is not granted; (vi) the materials to be seized will be located at the place identified in the application; (vii) the harm to the plaintiff in denying the application outweighs the harm to defendants in granting the order and (viii) if prior notice was given, defendants would destroy, move, hide or otherwise make such matter inaccessible to the court. 15 U.S.C. § 1116(d)(4)(B).  As discussed below, Plaintiff meets each of the relevant criteria for the issuance of an *ex parte* temporary restraining order under the Lanham Act.[10]

An *ex parte* temporary restraining order is particularly warranted in cases, such as the instant one, involving offshore counterfeiters who conceal their identities and engage in unlawful and harmful activities over the Internet to avoid revealing their actual locations and identities. (Nastasi Dec., ¶¶ 7-10, 28).  Defendants, who, upon information and belief, are located in China and operate their businesses exclusively over the Internet, knowingly and willfully offer for sale and/or sell Counterfeit Products through their User Accounts and on their Merchant Storefronts on Fruugo. (Capon Dec., ¶¶ 18-19; Nastasi Dec., ¶¶ 13-14, Ex. A).  The covert nature of Defendants and their counterfeiting activities make any order other than an *ex parte* temporary restraining order an exercise in futility.  The immediate and irreparable harm to Plaintiff's business and reputation, as well as to the goodwill associated with the Pop It Mark, in denying its Application for an *ex parte* temporary restraining order greatly outweighs the harm to Defendants' interests in continuing to offer for sale and sell Counterfeit Products. (Capon Dec., ¶ 26).

---

[10] Plaintiff has expressed its willingness to provide security in conjunction with the *ex parte* relief it seeks.  *See* [Proposed] Order, filed herewith.  Also, since Defendants' location and the location of the Counterfeit Products are unclear, Plaintiff is not requesting a seizure order in this Application. (Nastasi Dec., ¶¶ 19-11, 23-24.)

"To obtain a preliminary injunction, a plaintiff must establish: '(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly' in its favor.'" *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (quoting *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000)).  The "standards which govern consideration of an application for a temporary restraining order… are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992).  Plaintiff meets the standard for a preliminary injunction and the Court should enter a temporary restraining order.

### 1.   <u>Plaintiff is Likely to Prevail on the Merits of Its Lanham Act Claims</u>

In order to establish a likelihood of success on trademark counterfeiting and infringement claims, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that defendants' use of plaintiff's marks is likely to cause confusion. *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010).

First, the U.S. Trademark Registration certificate submitted in conjunction with this Application provide *prima facie* evidence of both the validity of the Pop It Mark as well as Plaintiff's ownership of the same. 15 U.S.C. § 1057(b). (Capon Dec., ¶¶ 9-10, Ex. B).

Second, a proper likelihood of confusion inquiry generally involves an analysis of the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp*. 287 F.2d 492, 495 (2d Cir. 1961).  Yet, "where counterfeit marks are involved, it is not necessary to conduct the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing." *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (internal citations omitted).  Instead, "[t]he court need only determine the more fundamental question of whether

there are items to be confused in the first place – that is, whether the items at issue . . . are, in fact, counterfeit and whether [d]efendants sold those items, or offered those items for sale." *Id.* at 383 (internal citations omitted).   Regardless, even if a *Polaroid* analysis were necessary, a straightforward application of the test demonstrates that likelihood of confusion exists in this case.

Finally, because Plaintiff has shown that it is likely to prevail on its trademark counterfeiting and trademark infringement claims, it has also shown that it likely will prevail on its claims for false designation of origin, passing off and unfair competition. *Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790, at *14-16 n.15 (S.D.N.Y. Sep. 24, 2013).

### 2.   Plaintiff is Likely to Prevail on Its State Law Claims

Because Plaintiff has shown a likelihood of success on its Lanham Act claims, Plaintiff has also shown a likelihood of success on its unfair competition and unjust enrichment claims under New York State law. *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 521 (S.D.N.Y. 2013).

### 3.   Plaintiff is Entitled to a Presumption of Irreparable Harm

Plaintiff is entitled to a rebuttable presumption of irreparable harm as it has shown that it is likely to succeed on the merits of its Lanham Act claims.  On December 27, 2020, the Trademark Modernization Act of 2020 (codified as part of the Consolidated Appropriations Act, 2021, Pub. L. 116-260) was signed into law. The Act, *inter alia*, amended the text of 15 U.S.C. § 1116(a) codified a rebuttable presumption of irreparable harm which, now reads in relevant part:

> ***A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order.***

*See City of N.Y. v. Lopez*, No. 21 CV 7862 (JPO), 2021 U.S. Dist. LEXIS 243449 (S.D.N.Y. Dec. 21, 2021). Accordingly, since Plaintiff established that it is likely to succeed on the merits of its claims under 15 U.S.C. § 1125(a), Plaintiff is entitled to a presumption of irreparable harm.

### 4. __The Balance of Hardships Favors Plaintiff__

The balance of hardships unquestionably and overwhelmingly favors Plaintiff.  Here, as described above, Plaintiff has suffered, and will continue to suffer, irreparable harm to its business, the value, goodwill and reputation built up in and associated with the Pop It Mark and to its reputation as a result of Defendants' willful and knowing sales of substandard imitations of the Pop It Products. (Capon Dec., ¶ 26).   Any harm to Defendants would only be the loss of Defendants' ability to continue to offer their Counterfeit Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from their illegal and infringing activities.   "Indeed, to the extent defendants 'elect[] to build a business on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (internal citation omitted).

### 5. __Enjoining Defendants from Using the Pop It Mark Will Serve the Public Interest__

The public interest will be served by the issuance of a temporary restraining order and preliminary injunction, as "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). Here, the public has an interest in being able to rely on the high quality of Pop It Products bearing and/or sold in connection with the Pop It Mark. (Capon Dec., ¶ 25).  Since Defendants have willfully and knowingly inserted substandard Counterfeit Products into the marketplace, the public would benefit from a temporary restraining order and preliminary injunction halting any further

sale and distribution of Defendants' Counterfeit Products. (Nastasi Dec., ¶¶ 13-14, Ex. A).

## C. PLAINTIFF IS ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' MERCHANT STOREFRONTS

### 1. Defendants' Assets Must be Frozen

Considering the nature of Defendants' counterfeiting businesses, and Plaintiff's showing that it has a high likelihood of succeeding on the merits of all of its claims, Plaintiff will be entitled to an equitable accounting of Defendants' profits from their sales of Counterfeit Products. Plaintiff's request for an asset freeze order granting Plaintiff information regarding the location of Defendants' Assets, the attachment of Defendants' Assets and an injunction preventing the transfer from or to Defendants' Financial Accounts by the Financial Institutions and Third-Party Service Providers is both necessary and appropriate, and is within this Court's discretion to preserve Plaintiff's right to the relief sought in the Complaint. *See* 15 U.S.C. § 1117(a).[11]

District courts have "authority to freeze those assets which could [be] used to satisfy an equitable award of profits." *North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted). In doing so, a court "may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity." *Id.* at *11. The onus is on "the party seeking relief [from any such asset freeze] to 'present documentary proof'" that its profits aren't from such illegal activity. *Id.*

Under 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(b), a plaintiff in an action arising thereunder is entitled to recover a defendant's profits derived from the counterfeiting and/or infringement and/or plaintiff's damages. *See Gucci Am. v. Bank of China*, 768 F.3d 122, 131-132 (2d Cir. 2014) (A copyright and/or trademark "infringer is required in equity to account for and

---

[11] *See also, e.g., Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010).

yield up his gains to the true owner," and "profits are then allowed as an equitable measure of compensation."). Specifically, with respect to claims involving the infringement of federally registered copyrighted works and/or those arising under the Lanham Act, it has been established in this Circuit, as well as sister circuits, that district courts have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting and/or another equitable remedy against allegedly infringing defendants. *Warner Bros. Entm't Inc. v. Doe,* No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014).

An asset freeze in the instant matter is unquestionably warranted because Defendants, who are foreign individuals and/or entities based in China, are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers solely via the Internet, and accepting payment for such Counterfeit Products in U.S. Dollars through Financial Institutions, thereby causing irreparable harm to Plaintiff in the form of lost sales, loss of goodwill and loss of control of its reputation with licensees, retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen. *See* Capon Dec., ¶ 26; *see also Dama S.P.A. v. Doe,* No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015).[12] Therefore, Plaintiff respectfully submits that this Court should exercise its inherent equitable power and freeze Defendants' Assets and Defendants' Financial Accounts for the purpose of preserving Defendants' funds and ensuring that a meaningful accounting of their profits can be made.[13]

---

[12] *See also supra* fn. 2.

[13] Upon the entering of an asset freeze, Plaintiff also requests that the Court Order Defendants and/or the Financial Institutions and/or the Third-Party Service Providers to immediately identify Defendants' Assets and Defendants' Financial Accounts and the respective current account or fund balances of the same.

### 2. **Defendants' User Accounts and Merchant Storefronts Must be Frozen**

A temporary restraining order which, in part, restrains the Third Party Service Providers from providing services to Defendants' User Accounts and Merchant Storefronts is warranted and necessary because the continued offering for sale and/or sale of the Counterfeit Products by Defendants on their Merchant Storefronts will result in immediate and irreparable injury to Plaintiff. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014); *AW Licensing, LLC v. Bao*, No. 15-CV-1373, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015).

### D. **PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS**

Plaintiff respectfully requests that this Court issue an order granting it permission to serve each Defendant via the following combination of electronic methods: 1) registered electronic mail or 2) messaging through Defendants' User Accounts and 3) website publication. For service by registered electronic mail, Plaintiff proposes using Outlook.com as well as Rmail (www.rmail.com), an online service that confirms valid proof of authorship, content, and delivery of an email, as well as the official time and date that the email was sent and received. (Nastasi Dec., ¶ 34). Along with service via email, Plaintiff respectfully requests that the Court, in its discretion, permit service via website publication.[14]

Plaintiff submits that its requested methods of alternative service are warranted herein based, not only statutory authority, but also the practical facts and circumstances surrounding this case.  First, third-party merchants on Fruugo, like Defendants, have been known to use aliases, false addresses and other incomplete identification information to shield their true identities, and based on Epstein Drangel's recent experience, even where a Defendant displays a complete

---

[19] Publication on a website has been deemed appropriate service under Fed. R. Civ. P (4)(3) "so long as the proposed publication is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"" *National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (quoting *Mullane*, 339 U.S. at 315-16).

address on their Merchant Storefront, such address typically turns out to be false or outdated.[15] It is, however, imperative for every Defendant to have a current and operational e-mail address to operate their Merchant Storefronts and conduct their businesses.  (Nastasi Dec., ¶ 33).  It is further worth mentioning that Covid-19 is currently rampant in China causing most businesses to either close their offices and/or work remotely.  *Id.* ¶ 34.

### 1. <u>Regardless of Whether the Hague is Applicable, Alternative Service via Electronic Means is Necessary and Proper Under the Circumstances</u>

#### a) Service on Defendants is Permissible Under Fed. R. Civ. P. 4(f)(3)

Plaintiff acknowledges that both the U.S. and China are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague"), however, Plaintiff respectfully submits that alternative service pursuant to Fed. R. Civ. P. 4(f)(3) is particularly appropriate here based on the exigent circumstances surrounding Plaintiff's Application *Celgard, LLC v. Shenzen Senior Tech. Material Co.*, No. 3:20-cv-130-GCM, 2020 U.S. Dist. LEXIS 89487, at *8-9 (W.D.N.C. May 20, 2020) (Plaintiff may request service via email in cases of emergency per the Hague Convention. Rule 4(f)(3) allows service *by other means* than those internationally agreed upon, so long as they are not specifically prohibited by international agreement. Thus, under Rule 4(f)(3), Plaintiff may request service via email— which, as noted above, does not appear to be prohibited by the Hague Convention—regardless of

---

[15] In the event the court deems necessary, Plaintiff proposes completing the first step of the bifurcated service, i.e. serving the Third Party Service Providers and Financial Institutions, awaiting their compliance with the directives of any Temporary Restraining Order entered, and Plaintiff proposes sending waivers of service via S.F. EXPRESS (BEIJING) CO., LTD. ("S.F. EXPRESS"), a courier service in China (similar to FedEx or UPS in the U.S.), which allows a sender to track the shipping status of a package and provides the sender with confirmation when a package has been received by the recipient and/or details about whether the recipient was located at the address, which will likely take Epstein Drangel's Beijing office approximately two (2) weeks.  Plaintiff submits that this will serve the dual purpose of (1) attempting to obtain waivers from Defendants as well as (2) additional diligence in discovering and/or confirming Defendants' physical addresses.  Pursuant to Fed R. Civ. P. 4(d)(1) "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons."  Plaintiff will submit supplemental briefing on this issue should the Court request it.

whether there is an emergency).

It is left to the Court's discretion whether to authorize service "by other means" under Rule 4(f)(3), and exhaustion of service methods under Rule 4(f)(1) or (f)(2) is not a prerequisite for service under 4(f)(3). *See Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 377 (S.D.N.Y. 2018); *see also Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330 (S.D.N.Y. 2015) ("[s]ervice under subsection [4(f)] (3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant."). In fact, as the Fifth Circuit recently confirmed, even where the Hague does apply, "[s]ervice pursuant to the Hague Convention listed in subjection (f)(1), does not displace subsection (f)(3), which permits service by other means." *Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161, at *3 (5th Cir. Feb. 14, 2022).

**(1)   The Exigent Circumstances Present Here Justify Alternative Service**

The Advisory Committee notes to Fed. R. Civ. P. 4 specifically contemplate Rule 4(f)(3)'s use as an alternative to compliance with the Hague.[16] The 1993 Advisory Committee Notes to Fed. R. Civ. P. 4 state, in relevant part, the following:

> The Hague Convention, for example, authorizes special forms of service "in cases of urgency if convention methods will not permit service within the time required by the circumstances. Other circumstances that might justify the use of additional methods include the failure of the foreign country's Central Authority to effect service within the six-month period provided by the Convention . . . . In such cases, the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement. Inasmuch as our Constitution requires that reasonable notice be given, an earnest effort should be

---

[16] Plaintiff respectfully submits that the Court's conclusion in *Smart Study Co. v. Acuteye-Us*, No. 21 Civ. 5860 (GHW), 2022 WL 2872297 (S.D.N.Y. July 21, 2022) (hereinafter "*Smart Study*"), that "the Court need not determine whether the request was truly urgent because it does not matter. There is no exigent circumstances exception in Rule 4(f)(3)" (*Smart Study*, 2022 WL 2872297 at *27) is directly belied by the 1993 Advisory Committee noted to Fed. R. Civ. P. 4. Additionally, Plaintiff submits that the Court's conclusion in *Smart Study*'s finding service by email on Chinese defendants does not comply with Fed. R. Civ. P. 4 or the Hague Convention is so broad as to prevent an American plaintiff from being able to sue and effectively serve a Chinese defendant in numerous circumstances, particularly Chinese defendants like the counterfeiters in this case, having the motivation and propensity to conceal their identities and locations and/or display false information regarding their identities and whereabouts.

made to devise a method of communication that is consistent with due process and minimizes offense to foreign law.

Fed. R. Civ. P. 4, Advisory Committee Notes, 1993 amendments.[17] In line with the Advisory Committee notes, recently, in an opinion read on the record in *FoxMind Canada Enterprises Ltd. v. Abctec, et al.*, 21-cv-5146 (KPF) (S.D.N.Y. July 14, 2022), Judge Failla found that the exigencies existing in that particular case counseled in favor of alternative service. Judge Failla held as follows:

> Here the Court concludes that alternative service was necessary on the circumstances of this case.  Although plaintiff did not attempt to serve the moving defendants before seeking alternative service, the Court has already explained that plaintiff harbored reasonable doubts about the veracity of the addresses affiliated with their Amazon user accounts.  The Court, therefore, does not believe it appropriate to institute a requirement that plaintiff attempt service under the Hague Convention using information that it had reason to believe was erroneous. . .Beyond the questionable authenticity of these addresses, there were also the exigencies of the case, which counsel, in favor of alternative service, plaintiff initiated this suit on an emergency posture picking an ex parte TRO in the hopes of immediately thwarting the sale of allegedly counterfeit goods on online marketplaces.  Any other strategy for instituting this action would have afforded the alleged counterfeiters an opportunity to evade enforcement of the trademark laws, thus obviating the release sought by plaintiff before the Court and before this Court had…a chance…to consider the merits of the claims.

Transcript of July 14, 2022 Telephone Conference, 21:11-22:10, a copy of which is attached to the *Nastasi Dec*. as Exhibit C.

Several federal district courts have likewise held that alternative service is appropriate where, as here, Plaintiff has demonstrated exigent circumstances justifying the urgent injunctive relief sought herein, making a quick and effective means of service necessary to prevent further irreparable harm to Plaintiff. *See e.g., Equipav S.A. Pavimentação, Engenharia e Comercia Ltda. v. Bertin*, No. 22-CV-04594 (PGG), 2022 WL 2758417, at \*5 (S.D.N.Y. July 14, 2022) ("As to

---

[17] The Supreme Court in *Water Splash*, noted that where an ambiguity in a treaty exists, "[t]hree extratextual sources are especially helpful…the Convention's drafting history, the views of the Executive, and the views of other signatories." *Water Splash*, 137 S. Ct. at 1511.

whether this Court's intervention is necessary, courts in this District have found that lengthy delays in service under the Hague Convention are sufficient to show that alternative service under Rule 4(f)(3) is warranted." (citing cases)); *Asia Cube Energy Holdings, LTD v. Inno Energy Tech Co.*, No. 20-cv-6203 (AJN), 2020 U.S. Dist. LEXIS 148012, at *10 (S.D.N.Y. Aug. 17, 2020) ("[Plaintiff's] pursuit of emergency relief bears on the question of whether judicial approval of alternative means of service is warranted"); *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) ("Court-directed service pursuant to Rule 4(f)(3) is appropriate when, for example, 'there is a need for speed that cannot be met by following the Hague Convention methods. . . .'") (internal quotation omitted); *Aircraft Engine Lease Finance, Inc. v. Plus Ultra Lineas Aereas, S.A.*, 21 Civ. 1758, 2021 WL 6621578, at *1 (S.D.N.Y. Apr. 23, 2021) ("[B]ecause service through the Hague Convention would unnecessarily delay this case, the Court finds that intervention is necessary."); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)."). Similarly, in *NBA*, the court held "[a] speedy method of service…was justified to ensure, among other reasons, that the funds gained by the allegedly infringing conduct would be recoverable." *NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790, 797 (N.D. Ill. 2021), citing *Strabala*, 318 F.R.D. at 114, quoting 4B FED. PRAC. & PROC. CIV. § 1134 (4th ed.).

### (2)    Service by Electronic Means is Not Prohibited by the Hague

Fed. R. Civ. P. 4(f)(3) enables a court to grant an alternative method of service so long as it: "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 WL 361739, at *7 (S.D.N.Y. Feb. 8, 2009) citing Fed. R. Civ. P. 4(f)(3).  Despite the Court's holding to the contrary in *Smart Study*, the alternative service requested by Plaintiff herein (i.e., service by electronic means), is not

prohibited by any international agreement.  As detailed further below, this has been confirmed by *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14 Civ. 1112 (VSB), 2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018).  Moreover, while *Smart Study* suggests that the holding in *Water Splash, Inc. v. Menon,* 137 S. Ct. 1504, 1505 (2017) "indicated" that the only permissible methods of service are those "specified" in the Hague, many courts have opined that, "the Convention neither authorizes nor prohibits service by email—it is entirely silent on the issue." *NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790, 797 (N.D. Ill. 2021) (citing *MacLean—Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 WL 5100414, at *2 (N.D. Ill. Dec. 1, 2008); *Sulzer Mixpac*, 312 F.R.D. at 331; *Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 WL 2633317, at *3 (N.D. Ill. June 25, 2021)).

### (3)   China's Objection to Article 10(a) Does Not Constitute an Objection to Service by Email

Despite China's objection to service by postal channels under Article 10, China's governing bodies (i.e. the National People's Congress and its Standing Committee) have not made any interpretations regarding whether the reservation to Article 10(a) includes email and this Court, along with many others, has held that such objection does not include service by email[18] and further, that service by email is not prohibited by any international agreement.[19] *See, e.g. Equipav S.A.*, 2022 U.S. Dist. LEXIS 124987, at *5 (finding that the Hague convention does not prohibit

---

[18] U.S. Courts have also found that since China allows its own courts to "order service of Chinese process by email on defendants outside China, it cannot credibly object to U.S. courts ordering the same on defendants located in China". *See Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'n Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *11-12 (N.D. Ill. Apr. 1, 2021) ("Chinese law permits its courts to order service by email on a party outside of China, in part because email permits the person to be served to 'acknowledge' receipt." *See id.* at 8 (p. 47, Article 267) ("A people''s court may serve procedural documents on a party without a domicile within the People's Republic of China in the following ways: . . . Service by . . . e-mail and any other means through which the receipt of the document may be acknowledged."); *see also Chanel, Inc. v. Handbagstore*, No. 20-CV-62121-RUIZ/STRAUSS, 2021 WL 3060329, at *25-30 (S.D. Fla. June 30, 2021); *see also Smart Study*, Dkt. 98 at ¶ 11.

[19] International law, not foreign law, is the relevant law for an analysis under Rule 4(f)(3). *See Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, 2017 WL 11509784, at *23 (S.D.N.Y. 2020) (noting that "Rule 4(f)(3) does not require a finding that the method of service ordered is permitted under foreign law.").

service via e-mail despite the fact that Brazil has objected to Article 10 of the Hague Convention regarding service by mail); *ShelterZoom Corp. v. Goroshevsky*, 19-cv-10162 (AJN), 2020 WL 4252722, at *2 (S.D.N.Y. July 23, 2020) ("[N]umerous courts have held that service by email does not violate any international agreement, even when a country objects to Article 10 of the Hague Convention[.]" (quotation marks and citation omitted)); *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 343 (E.D.N.Y. 2021) ("Courts in the Second Circuit have generally found that email is not a postal channel and that service by email is authorized if the signatory country has not explicitly objected to service by electronic means.")  (collecting cases);  *see also, e.g. Sulzer*, 312 F.R.D. at 332; *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 471 (D. Mass. 2020); *The Neck Hammock, Inc v. Danezen.com*, 2020 WL 6364598, at *4 (D. Utah Oct. 29, 2020); *Smart Study*, Dkt. 98. In *Luxottica Grp. S.p.A. v. P'ships, et al.*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) the court disagreed with this Court's holding in *Sulzer*, finding China's objection to service via postal channels is an objection to service by email in reliance on *Water Splash*. Yet, on a motion for reconsideration, the *Luxottica* court conceded that the Supreme Court did not "conclusively settle the precise questions" because neither *Water Splash* nor *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) involved Rule 4(f)(3) or e-mail service.  *Luxottica Grp. S.p.A. v. P'ships, et al.*, 18 Civ. 2188, 2019 WL 2357011, at *3 (N.D. Ill. June 4, 2019); *see also In re Bibox Grp. Holdings Sec. Litig.*, No. 20cv2807(DLC), 2020 WL 4586819, at *5 (S.D.N.Y. Aug. 10, 2020) ("Service by email or social media are not among those listed in Article 10. Courts have understood objections to the alternative channels of service in Article 10 to be limited to the methods specifically enumerated therein."); *see also Smart Study*, Dkt. 98.

Moreover, Plaintiff further respectfully submits that an analysis of Chinese law is irrelevant here for purposes of Rule 4(f)(3). In *Advanced Access Content*, where the defendant argued that

email service violated the laws of China, this Court held "[e]ven if true, the fact that email service does not comport with Chinese law or instructions from the Chinese government under the Hague Convention is inapposite to the Rule 4(f)(3) inquiry, which, requires only that service is not prohibited by international agreement."  2018 WL 4757939 at *13; *see also, Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement," and "no other limitations are evident from the text."); *see also Smart Study*, Dkt. 98 at ¶ 11.

**b)  Service is also Permissible Under Fed. R. Civ. P. 4(f)(2)(A)**

Pursuant to Fed. R. Civ. P. 4(f)(2)(A)[20], service may occur at a place not within any judicial district of the U.S. "if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . as prescribed by the foreign country's law for service in that country **in an action in its courts of general jurisdiction**." Fed. R. Civ. P. 4(f)(2)(A) (*emphasis added*). "While this precise issue has not been explicitly ruled on by any other court in the Second Circuit, courts have appeared to implicitly accept that Rule 4(f)(2)(A) allows for service through any method…permitted by the recipient country." *Dev. Specialists, Inc. v. Li (In re Coudert Bros. LLP)*, No. 16-CV-8237 (KMK), 2017 WL 1944162, at *34-35 (S.D.N.Y. May 9, 2017); *see also Appel v. Hayut*, No. 20 Civ. 6265 (JPC), 2020 WL 7211212, at *1 (S.D.N.Y. Dec. 7, 2020) ("Rule 4(f)(2)(A) on its face appears to allow, without limitation, service by mail if the recipient country so allows.").

While Chinese law is silent with respect to the specific situation of foreign litigants serving

---

[20] Notably, while the plaintiff in *Smart Study* actually argued that service on the Chinese defendants via e-mail was permitted under, Fed. R. Civ. P. 4(f)(2)(A), Judge Woods' opinion analyzed whether such service was permissible under Rule 4(f)(2)(C), and accordingly, and respectfully, Judge Woods' opinion did not address the service argument advanced by Plaintiffs in their Application herein.

Chinese companies and individuals,[21] China's courts of general jurisdiction do have statutory authority for electronic service in both foreign and domestic cases.[22]

Accordingly, because the most natural reading of Rule 4(f)(2)(A), on its face and in context, is that service may be effected by any means prescribed by the law of the recipient country, and because the law of China permits service via e-mail and other electronic means, Plaintiff submits that service on Defendants via registered electronic mail with confirmation of delivery by Rmail, and website publication is also appropriate and effective under Rule 4(f)(2)(A).

---

[21] Also, the trend in China is towards facilitating service by more efficient means, including electronic means. *See* the Declaration of Danielle S. Futterman filed in *Spin Master Ltd. v. Chakaruna4169, et al.*, No. 22-cv-553 (JPC) (S.D.N.Y. 2022) at Dkt. 43 ("*Spin Master* Declaration"), Ex. A at ¶¶ 11-19, Exs. 16-17.  As to PRC Article 90, email service on a resident domestic defendant in a case before a Chinese court is allowed with consent, although what constitutes consent is not expressly defined in Chinese laws and regulations. *See Smart Study*, Dkt. 98 at ¶ 13. Moreover, it should be noted that when service is attempted on a Chinese defendant pursuant to Article 2 of the Hague, that service can be accomplished by e-mail pursuant to Chinese law. When a party attempts service through China's Central Authority (i.e., The Ministry of Justice), the foreign forwarding party sends the request for service to the Central Authority of China, which refers the document to the competent court. The court will serve the document directly to the addressee or the person who is entitled to receive the document. Where direct service is impracticable in some cases, other methods may be employed in accordance with the Civil Procedure Law. *See* China-Central Authority and Practical Information, Hague Conference on Private International Law, https://www.hcch.net/en/states/authorities/details3/?aid=243 (last visited Aug. 5, 2022). Accordingly, since the Central Authority serves through the Chinese courts and the Chinese courts are statutorily authorized to serve via e-mail, if proceeding by way of the Hague, a Chinese defendant may inevitably end up being served by e-mail in the end, thereby lending further support to the propriety of service via email in the first instance, and that service via e-mail is in fact prescribed by Chinese law.

[22] First, under Article 90 (formerly Article 87) of the PRC Civil Procedure Law, electronic service is permitted on a Chinese defendant if consent has been obtained.[22] *See e.g. Hangzhou Chic Intelligent Tech. Co.*, 2021 WL 1222783, at *11 ("Subject to the consent of the person on which a procedural document is to be served, the document may be served by way of facsimile, **electronic mail** or any other means through which the receipt of the document may be acknowledged, with the exception of judgments, rulings and mediation statements…" (emphasis added)); *Smart Study*, Dkt. 98 at ¶¶ 13, 20-21. Further, and most relevantly, Article 274 of the PRC Civil Procedure Law contains the service methods that are applicable and permissible when there is an international case, and there is an occasion to serve documents internationally (i.e., when a Chinese litigant is serving a foreign – for example, an American – defendant). *Smart Study*, Dkt. 98 at ¶¶ 14, 21-26, Ex. 6; *Spin Master* Declaration, Ex. A at ¶¶ 21-22. Pursuant to Article 274 (formerly Article 267) of the PRC Civil Procedure Law ("PRC Article 274"), in foreign-related or international cases[22], Chinese courts may serve by email **without complying with the Hague mechanism(s)**, with or without consent. *Id.*; Article 274(7) (*emphasis added*). In addition to Article 274, under the doctrine of "deemed service" (视为送达, in Chinese), a Chinese court may find that service has been achieved even if a foreign defendant does not return a service receipt or fails to defend the action in court, if it can be inferred from the circumstances that the defendant has become aware of the litigation. *Smart Study*, Dkt. 98 at ¶¶ 15, 28-31; *Spin Master* Declaration, Ex. A, ¶¶ 21-22.

2. **Based on Plaintiff's Diligent Investigation, The Ability for Defendants to Receive Notice of this Lawsuit at Their Physical Addresses is Questionable at Best**

As supported by the Nastasi Dec., Plaintiff, through its counsel, has made reasonably diligent efforts to discover the physical addresses of Defendants in this action. "Courts in this Circuit have found an address is 'not known' if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Kelly Toys Holdings, LLC v. Top Dep't Store*, 2022 U.S. Dist. LEXIS 154175, at *19-21 (S.D.N.Y. Aug. 26, 2022) (quoting *Advanced Access*, 2018 WL 4757939, at *7-8).

Epstein Drangel's Beijing office researched the addresses displayed on Defendants' Merchant Storefronts and were entirely unable to confirm the accuracy of them. As articulated in the Nastasi Dec., in Epstein Drangel's experience, even where we are able to locate addresses, they are often false, outdated or not able to be connected to the respective Defendant for which it is displayed.[23] *Id.* ¶¶ 27-28. Accordingly, despite Plaintiff's reasonable diligence in attempting to confirm the accuracy of Defendants' physical addresses, it was unable to verify many of them as associated with Defendants. *See, e.g., Kelly Toys Holdings*, 2022 U.S. Dist. LEXIS 154175, at *21 (holding plaintiff was not required to hire a private investigator in China to verify whether a physical address associated with a domain name is in fact authentic and that the extensive and multi-dimensional efforts taken established plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process) (internal citations omitted); *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988 (GBD), 2007 U.S. Dist. LEXIS 19780, at *1, *3 (S.D.N.Y. Mar. 12, 2007) (approving service of online retailers by email and fax, where service by mail to

---

[23] In fact, when Epstein Drangel's Beijing office attempted to confirm the accuracy of Defendant when Epstein Drangel's Beijing office attempted to confirm the accuracy of Defendant Zhongshan Linghui Garden Engineering's address, it discovered that the address was registered to a company called "Guangzhou Xinghui Finance and Taxation Agency Co., Ltd." which did not match the corporate name that Defendant Zhongshan Linghui Garden Engineering displayed on its Merchant Storefront. This is the case for many Defendants in this Action. (Nastasi Dec., ¶ 27).

listed physical addresses had been attempted but was returned, and where email addresses and fax numbers appeared operational); *Advanced Access*, 2018 WL 4757939, at *4 (finding efforts reasonably diligent, and approving service by email, where plaintiff "investigat[ed]" the physical addresses associated with Chinese online retailer's domain names, searched the internet, "called known phone numbers, and conducted in-person visits where reasonable"); *Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459 (SAS), 2010 U.S. Dist. LEXIS 26536, at *2 (S.D.N.Y. Mar. 22, 2010) (finding plaintiff's address was "not known," and that the Hague Convention was thus inapplicable, where plaintiff had "actively, though unsuccessfully, attempted to obtain [Indian defendant's] address in a variety of ways").[24]

### 3. Service by Electronic Means Comports with Due Process

Service on Defendants by electronic means also comports with due process, as it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 309 (1950); *see also Zanghi v. Ritella*, 2020 WL 589409, at *6 (S.D.N.Y. Feb. 5, 2020) (judicial approval of service via email is generally supported by facts indicating that the person to be served will likely receive the documents); *Pearson Educ. Inc. v. Doe 1*, 18-CV-7380, 2019 WL 6498305,  at *3 (S.D.N.Y. Dec. 2, 2019) ("Email service has also repeatedly been found

---

[24] To the extent the Court finds that Plaintiff did not exercise sufficient reasonable diligence, Plaintiff proposes completing the first step of the bifurcated service, i.e. serving the Third Party Service Providers and Financial Institutions, awaiting their compliance with the directives of any Temporary Restraining Order entered, and Plaintiff proposes sending waivers of service via S.F. EXPRESS (BEIJING) CO., LTD. ("S.F. EXPRESS"), a courier service in China (similar to FedEx or UPS in the U.S.), which allows a sender to track the shipping status of a package and provides the sender with confirmation when a package has been received by the recipient and/or details about whether the recipient was located at the address, which will likely take Epstein Drangel's Beijing office approximately two (2) weeks.  Plaintiff submits that this will serve the dual purpose of (1) attempting to obtain waivers from Defendants as well as (2) additional diligence in discovering and/or confirming Defendants' physical addresses.  Pursuant to Fed R. Civ. P. 4(d)(1) "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons."  Plaintiff will submit supplemental briefing on this issue should the Court request it.

by courts to meet the requirements of due process." (internal citation omitted).  This Court held

the bar is met where, as here, Defendants engaged in online business and regularly communicated

with customers via email. *Mattel, Inc. v. Animefunstore, et al.*, 18 Civ. 8824 (LAP) (Dkt. 81)

(S.D.N.Y. May 1, 2020); *see also Sulzer*, 312 F.R.D. at 332 (service through email was appropriate

where the "email address in question is listed prominently on [defendant's internet homepage…[,]

[the defendant] presumably relies at least partially on contact through [its email] to conduct

overseas business, and it is reasonable to expect [defendant] to learn of the suit against it through

this email address."); *Kaneka Corp.*, 2017 WL 11509784 at *9 (email service appropriate where

defendant conducted its business through email.").  Moreover, in *NBA*, the court held that "email

was a more reliable method of service…because Defendant's email address was verified by the

sales platform, while their physical addresses were not." *NBA Props.*, 549 F. Supp. 3d at 797; *see

also Restoration Hardware, Inc.*, 2017 WL 11509784, at *23 (finding that in light of the evidence

that the defendant was associated with certain electronic email accounts, due process was "easily

satisfied"); *see also*, *Ouyeinc Ltd.*, 2021 WL 2633317, at *3 ("courts have routinely upheld service

by email" in infringement actions where online stores' "business appeared to be conducted entirely

through electronic communications").  Accordingly, Plaintiff respectfully submits that service by

e-mail under Rule 4 is the most effective means to ensure Defendants are reasonably apprised of

this action.[25]

---

[25] To the extent the Court requires Plaintiff to attempt service on some or all Defendants via the Hague, Plaintiff respectfully submits it is entitled to an extension of any Temporary Restraining Order entered in this action until service on Defendants is completed.  Pursuant to Fed. R. Civ. P. 65(b)(2), a district court may extend a TRO "for good cause".  Fed. R. Civ. P. 65(b)(2). *See e.g., Trs. of Columbia Univ. v. Encyclopaedia Iranica Found.*, 2020 U.S. Dist. LEXIS 155031, at *3 (S.D.N.Y. Aug. 26, 2020) (extending a TRO until after the submission of the parties' post-hearing briefs, because such time will allow the Court to consider the parties' submissions, and because the extension is supported by the reasons stated in the Court's decision granting the TRO) (citing *In re Criminal Contempt Proceedings Against Gerald Crawford, Michael Warren*, 329 F.3d 131, 136-39 (2d Cir. 2003) (holding that a TRO, extended for good cause pending resolution of preliminary injunction proceedings was a valid basis for appellants' contempt convictions).  Moreover, to the extent the Court requires Plaintiff to attempt service via the Hague, Plaintiff

### E.  PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY

Additionally, Plaintiff respectfully requests that the Court order expedited discovery from Defendants, Financial Institutions and Third Party Service Providers regarding the scope and extent of Defendants' counterfeiting and infringing activities, as well as Defendants' account details and other information relating to Defendants' Financial Accounts, Assets and/or any and all User Accounts and or Financial Accounts with the Third Party Service Providers, including, without limitation any and all websites, any and all User Accounts and any and all Merchant Storefronts, including, without limitation, those owned and operated, directly or indirectly, by the Third Party Service Providers and the Financial Institutions.

Generally, a party may not seek discovery prior to a Rule 26(f) conference unless authorized by a court order. Fed. R. Civ. P. 26(d)(1).  In the past, Courts in this District have often applied a four-factor test to determine when expedited discovery may be granted,[26] but now apply a more flexible "good cause" test to examine "the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (internal citation omitted).  Regardless of which test, Plaintiff has established that it is entitled to the expedited discovery requested for good cause shown. *See id*. at 327.

### F.  PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE

In determining the amount of the bond that a moving party must post, this Court is "vested with wide discretion." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).  Plaintiff respectfully submits the provision of security in the amount of $5,000 is sufficient. *Rovio*

---

further proposes providing Defendants with notice of the lawsuit via e-mail prior to the completion of the Hague service.
[26] *See Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

*Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017).[27]

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that its Application be granted *ex parte* in its entirety.

Dated:  November 2, 2022                                        Respectfully submitted,

EPSTEIN DRANGEL LLP

BY: _____
        Gabriela N. Nastasi
        gnastasi@ipcounselors.com
        Jason M. Drangel (JD 7204)
        jdrangel@ipcounselors.com
        Ashly E. Sands (AS 7715)
        asands@ipcounselors.com
        Danielle S. Futterman (DY 4228)
        dfutterman@ipcounselors.com
        60 East 42nd Street, Suite 1250
        New York, NY 10165
        Telephone:      (212) 292-5390
        Facsimile:      (212) 292-5391
        *Attorneys for Plaintiff*
        *FoxMind Canada Enterprises Ltd.*

---

[27] Moreover, this Court has gone as far as to hold that no security bond is necessary in similar circumstances.  *See Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-RJS-JSR (S.D.N.Y. Oct. 4, 2018) (The Hon. Richard J. Sullivan held that no security bond was necessary because "it strikes me almost as fairly arbitrary.")