```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
------------------------------------------------------

FOXMIND CANADA ENTERPRISES LTD.,

                Plaintiff,

     - against -

BEIJING HUI XIN ZHI XIANG SHANGMAO
YOUXIAN GONGSI, ET AL.,

                Defendants.

22-cv-9383 (JGK)

MEMORANDUM OPINION
AND ORDER

------------------------------------------------------

**JOHN G. KOELTL**, District Judge:

    The plaintiff, FoxMind Canada Enterprises Ltd. ("FoxMind"), seeks a default judgment and permanent injunction against the Defaulting Defendants.[1] For the reasons stated below, the motion is **granted**, and the Court enters the requested judgment.

## I.

    The complaint alleged claims against numerous defendants for counterfeiting of the plaintiff's registered trademark in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1116, and 1117; infringement of the plaintiff's registered trademark in violation of 15 U.S.C. § 1114; false designation of origin, passing off, and unfair competition in violation of 15 U.S.C. § 1125(a); and unfair competition under state law, all arising

---

[1] Various defendants originally named in this case have been voluntarily dismissed throughout the litigation pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). In total, the Court enters the default judgment today against fifteen Defaulting Defendants. The Defaulting Defendants (hereinafter "Defaulting Defendants") are listed in the Glossary of the judgment.

Case 1:22-cv-09383-JGK   Document 51   Filed 02/09/24   Page 2 of 17

from the defendants' counterfeiting of the plaintiff's Pop It trademark and Pop It products. Compl. ¶¶ 41-79, ECF No. 9. The plaintiff now seeks statutory damages for the Defaulting Defendants' counterfeiting of the plaintiff's registered mark under 15 U.S.C. § 1117(c) in the amount of $50,000 per Defaulting Defendant and post-judgment interest calculated pursuant to the statutory rate. Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") ¶¶ 54, 61, ECF No. 48.

On January 25, 2023, the plaintiff obtained a Clerk's Certificate of Default against the Defaulting Defendants. ECF No. 31. On January 30, 2023, the Court entered an order to show cause why a default judgment and permanent injunction should not be entered against the Defaulting Defendants, and the Court set a date of February 10, 2023 for the Defaulting Defendants to respond. ECF No. 37. The Defaulting Defendants have failed to appear in this case and have failed to respond to the order to show cause.

**II.**

**A.**

"Federal Rule of Civil Procedure 55 sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry

of a default judgment."[2] Gold Medal Produce, Inc. v. KNJ Trading Inc., No. 19-cv-3023, 2020 WL 2747312, at *1 (S.D.N.Y. May 27, 2020). The first step "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011). Under Rule 55(a), a Clerk of the court is empowered to enter a default against a party that has not appeared. See New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). The Clerk has entered such a default in this case.

"The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." Mickalis Pawn Shop, 645 F.3d at 128. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); see also Gold Medal Produce, 2020 WL 2747312, at *1.

In determining whether to grant a motion for default judgment, the Court must consider "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

3

the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Indymac Bank, F.S.B. v. Nat'l Settlement Agency, No. 07-cv-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007). All three factors favor the entry of a default judgment in this case. The Defaulting Defendants' failures to respond to the complaint and to the motion for default judgment indicate willful conduct. The Court is unaware of any meritorious defense that the Defaulting Defendants would have to the plaintiff's claims, and the plaintiff will be prejudiced without a default judgment because the plaintiff will have no other remedy. See also Smart Study Co. v. lizhiwangluo16, No. 19-cv-7725, 2020 WL 3639659 (S.D.N.Y. July 6, 2020).

**B.**

In light of the Defaulting Defendants' default in this case, the Court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in the plaintiff's favor, but the Court must still determine whether the plaintiff's allegations establish the Defaulting Defendants' liability as a matter of law. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). The following facts are taken from the

complaint and the affidavits, declarations, and exhibits filed by the plaintiff.

The plaintiff is a Canadian toys and games distributor, which distributes toys and games for children that develop their reasoning skills, spatial logic and other skills associated with science, technology, engineering, and math (STEM) under its various brands. Compl. ¶¶ 5, 7. One of the plaintiff's most successful brands is Pop It, "a soothing tactile toy and smart bubble popping game designed to stimulate children's senses and develop logic and reasoning skills." Id. ¶ 8. Videos of people using Pop It products have amassed over 2.5 billion views on TikTok and other social media channels. Id. ¶ 9. The plaintiff sells its Pop It products through companies including Amazon, Target, Barnes and Noble, and Staples. Id. ¶ 10. The plaintiff owns registered United States trademark No. 6,183,005 for "POP IT!" for goods in trademark class 28. Id. ¶ 13, Ex. B.

The defendants are individuals and/or businesses located in China but conducting business in the United States through user accounts and merchant storefronts on Fruugo, an online marketplace, where they offer for sale products that appear identical to the plaintiff's Pop It products. Id. ¶ 22; Declaration of Gabriela N. Nastasi ("Nastasi Decl.") ¶ 3, ECF No. 16. The plaintiff alleges that the defendants' unlawful actions include "manufacturing, importing, exporting,

5

advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York[.]" Compl. ¶ 27. The defendants are not authorized by the plaintiff to deal in the Pop It products, and the defendants' counterfeit products are virtually identical to the plaintiff's Pop It products. Id. ¶¶ 28, 32-34.

## C.

After independently reviewing the allegations in the complaint and the accompanying affidavits, declarations, and exhibits, the plaintiff is entitled to a default judgment as to liability on all the claims brought against the Defaulting Defendants.

As an initial matter, the Court has personal jurisdiction over the Defaulting Defendants. In order to exercise personal jurisdiction over a defendant, the court must look to whether there is jurisdiction under the applicable statute and whether the exercise of jurisdiction is consistent with due process. See Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005). The law of the forum state, N.Y. C.P.L.R. § 302(a)(1), applies to the first inquiry. New York's personal jurisdiction statute permits jurisdiction over a non-domiciliary, which all the defendants in this case are, who "in person or through an agent . . . transacts any business within

6

the state" and the "cause of action arise[es] from" that conduct. N.Y. C.P.L.R. § 302(a); see also Gerstle v. Nat'l Credit Adjusters, LLC, 76 F. Supp. 3d 503, 509-10 (S.D.N.Y. 2015). With respect to the due process analysis, jurisdiction over a non-domiciliary is proper where "1) the defendant has sufficient minimum contacts with the forum and 2) the assertion of personal jurisdiction is reasonable under the circumstances of the particular case." Gerstle, 76 F. Supp. 3d at 510.

The plaintiff's allegations are sufficient for this Court to exercise personal jurisdiction over the Defaulting Defendants. The Defaulting Defendants have transacted business within the state by virtue of their operation of online user accounts and merchant storefronts through which customers in New York can view and purchase the counterfeit products at issue in this case. The Defaulting Defendants' commercial reach into New York through their online marketplaces is attested to by the plaintiff's counsel's own purchases of counterfeit products through the Defaulting Defendants' storefronts. See Nastasi Decl. ¶¶ 17-20, Ex. A; Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 170 (2d Cir. 2010) ("[C]ourts have explained that section 302 is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial

7

relationship between the transaction and the claim asserted."); Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC, No. 15-cv-8459, 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016) ("Regularly offering and selling goods via an online marketplace such as Amazon.com can provide a basis for personal jurisdiction under CPLR § 302(a), even though Defendants do not control their Amazon.com storefront or its interactivity to the same extent that they control their own highly interactive website."). Further, the Defaulting Defendants' operations, which make the counterfeit products available in New York, demonstrate that there is an "articulable nexus or substantial relationship between the business transaction and the claim asserted." Gucci Am., Inc. v. Weixing Li, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015). The Defaulting Defendants' acts of "selling counterfeit goods into New York satisfies the long-arm statute under section 302(a)(1)." Chloe, 616 F.3d at 170. Because exercising personal jurisdiction over the Defaulting Defendants complies with Section 302(a)(1), it also comports with constitutional due process. See Energy Brands Inc. v. Spiritual Brands Inc., 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008).

    The plaintiff's allegations establish the Defaulting Defendants' liability for counterfeiting infringement of the plaintiff's registered trademark as a matter of law. There are two elements of a trademark infringement claim under the Lanham

8

Act: "(1) the plaintiff's ownership of a valid trademark and (2) the likelihood of confusion from the defendants' use of the trademark without the plaintiff's permission." Coach, Inc. v. O'Brien, No. 10-cv-6071, 2012 WL 1255276, at *12 (S.D.N.Y. Apr. 13, 2012). The plaintiff's valid registered trademark, see Declaration of David Capon ("Capon Decl.") ¶ 10, ECF No. 17; id., Ex. B, satisfies the first prong and the plaintiff's allegations that the Defaulting Defendants distributed counterfeit products bearing the plaintiff's well-known mark is sufficient to satisfy the second prong. See Coach, 2012 WL 1255276, at *12.[3]

Moreover, because the plaintiff's allegations establish the Defaulting Defendants' liability for trademark infringement, the allegations also establish the Defaulting Defendants' liability for false designation of origin, passing off, and unfair competition under the Lanham Act. See Richemont N. Am., Inc. v. Huang, No. 12-cv-4443, 2013 WL 5345814, at *5 n.15 (S.D.N.Y. Sept. 24, 2013).

Because judgment in this case, both with respect to damages and injunctive relief, is properly entered against the Defaulting Defendants under the federal Lanham Act, the

---

[3] Exhibit C of the complaint, ECF No. 9, and the Declaration of Gabriela N. Nastasi and the attached exhibits, ECF No. 16, depicting defendants' products and product listings on Fruugo establish that the Defaulting Defendants have all engaged in the production and selling of counterfeit products.

plaintiff's allegations are also sufficient to establish liability for the state law unfair competition claim. Unfair competition under state law parallels unfair competition under the Lanham Act, except that the plaintiff must show either actual confusion or a likelihood of confusion as well as bad faith on the part of the defendants. See id. The Defaulting Defendants' counterfeiting establishes both actual confusion between the products of the plaintiff and the Defaulting Defendants' products as well as bad faith on the part of the Defaulting Defendants.

Because the plaintiff's allegations are sufficient as a matter of law to satisfy the trademark claims brought in this action, a default judgment is properly entered against the Defaulting Defendants as to liability.

### III.

The entry of a default judgment against the Defaulting Defendants establishes the Defaulting Defendants' liability in this case based on the well-pleaded allegations in the complaint, but the defaults are "not an admission of damages." Mickalis, 645 F.3d at 128. Following default, the Court may not simply rely on the plaintiff's determination of damages, but "must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir.

10

1999). In this case, the plaintiff's submissions are sufficient to determine damages on the papers without an evidentiary hearing. See Nemesis 2 LLC v. Salvati, No. 19-cv-3373, 2020 WL 2306444, at *5 (S.D.N.Y. May 8, 2020).

The plaintiff seeks damages of $50,000 against each Defaulting Defendant under the Lanham Act, 15 U.S.C. § 1117(c), for trademark counterfeiting of the plaintiff's registered mark. Under the Lanham Act, the owner of a registered trademark, which the plaintiff in this case is as the owner of the Pop It mark, may elect, in lieu of actual damages and profits, an award of statutory damages for the use of counterfeit marks of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" or "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c).

Willfulness on the part of the Defaulting Defendants is established in this case. Willfulness is established "[b]y virtue of the default[.]" Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003); see also Coach, 2012 WL 1255276, at *13. Willfulness is also established by the apparent similarity between the Defaulting Defendants' products and the

11

genuine plaintiff's mark, which is attested to by the affidavits, declarations, and exhibits submitted by the plaintiff. See Coach, 2012 WL 1255276, at *13.

Where defendants have engaged in willful counterfeiting of the plaintiff's mark, the Court looks to the following seven factors, originally used to assess damages under the Copyright Act, to determine the "just" amount of statutory damages for the Defaulting Defendants' willful infringement of the Lanham Act:

> (1) the expenses saved and the profits reaped by the defendant infringer; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Id.

The defendants' failure to appear in this case weighs in favor of a heightened award of statutory damages under the sixth factor. Moreover, the fact that the Defaulting Defendants operate on a web platform to distribute and sell the counterfeiting products supports "an inference of a broad scope of operations," and thus heightened statutory damages are appropriate under the first and second factors despite the lack of specific evidence attesting to actual damages suffered by the plaintiff in lost revenue or profits reaped by the Defaulting Defendants. See AW Licensing, LLC v. Bao, No. 15-cv-1373, 2016

12

WL 4137453, at *3 (S.D.N.Y. Aug. 2, 2016). With respect to the third factor, the Pop It products and Pop It mark have national recognition, and the plaintiff has expended significant efforts to build and maintain a respected brand known for high-quality products. See Capon Decl. ¶¶ 15-18. The remaining factors further support a heightened award of statutory damages where, as in this case, the Defaulting Defendants have acted willfully and therefore the statutory damages should incorporate a "punitive component to discourage further wrongdoing by the defendants and others." Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009).

Given the application of the above factors, and the fact that the Lanham Act provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed," statutory damages of $50,000 against each Defaulting Defendant is "just" within the meaning of 15 U.S.C. § 1117(c). This amount of statutory damages is consistent with awards in other similar cases for willful counterfeiting of trademarks. See, e.g., All-Star Mktg. Grp., LLC v. Media Brands Co., Ltd., 775 F. Supp. 2d 613, 625 (S.D.N.Y. 2011) (collecting cases establishing that $25,000-$50,000 in statutory damages per mark, which is well below the statutory maximum, is appropriate where there is no information about the defendants' earnings or the plaintiff's losses).

Therefore, an award of statutory damages of $50,000 per each of the fifteen Defaulting Defendants under the Lanham Act is "just" and is sufficient to compensate the plaintiff and deter the Defaulting Defendants and others from engaging in unlawful counterfeiting.

The plaintiff also seeks post-judgment interest on the damages award, which the Court will award to the plaintiff pursuant to 28 U.S.C. § 1961. See Spin Master, Ltd. v. 13385184960@163.com, No. 18-cv-10524, 2020 WL 2614766, at *5 (S.D.N.Y. May 22, 2020) (awarding post-judgment interest in a trademark infringement case).

The plaintiff also seeks permanent injunctions against the Defaulting Defendants. The permanent injunctions against the Defaulting Defendants are substantially the same as the preliminary injunctions properly entered previously in this case. ECF Nos. 14 and 20.

An injunction on a motion for default judgment is appropriate if the plaintiff can show that "(1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." CommScope, Inc. of N. C. v. Commscope (U.S.A.) Int'l Grp. Co., Ltd., 809 F. Supp. 2d 33, 41 (N.D.N.Y. 2011).

With respect to the first prong, the permanent injunctions to enjoin a variety of unlawful behaviors under the Lanham Act

14

are authorized by the Lanham Act. See 15 U.S.C. § 1116(a) ("The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."); Harris v. Fairweather, No. 11-cv-2152, 2012 WL 3956801, at *11 (S.D.N.Y. Sept. 10, 2012) (entering a final injunction under the Lanham Act following entry of a default judgment), report and recommendation adopted, 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012).

A party seeking an injunction must demonstrate actual success on the merits, irreparable harm, the lack of an adequate remedy at law, that the balance of hardships between the plaintiff and the defendants favor the plaintiff, and that the public interest would not be disserved by a permanent injunction. See eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006); see also Coach, 2012 WL 1255276, at *17. Actual success is established in this case as a result of the Defaulting Defendants' default. See CommScope, 809 F. Supp. 2d at 41. Irreparable harm is satisfied in a trademark infringement case where there is a likelihood that ordinary purchasers will

15

be misled or confused about the source of the goods in question, which is established here because the plaintiff's allegations, accepted as true, demonstrate likelihood of confusion between the plaintiff's products and the Defaulting Defendants' counterfeit products. See id. (collecting cases). The plaintiff's papers in support of the permanent injunction also demonstrate that the defendants' counterfeiting is willful and will continue unless the defendants are restrained by a permanent injunction and that absent an injunction of the defendants' various behaviors relating to counterfeiting, the plaintiff's mark will continue to be infringed, which is also demonstrated by the Defaulting Defendants' failure to appear in this case. The plaintiff therefore lacks an adequate remedy at law absent a permanent injunction. The final two factors favor the injunction because the plaintiff will continue to suffer irreparable harm and the public has an interest in not being deceived and being assured that marks are of known quality and origin. See New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp 2d 305, 344 (S.D.N.Y. 2010).

The specific provisions of the injunction provided for in the judgment enjoin a variety of activities that are necessary to enjoin continued infringement of the plaintiff's Pop It mark as well as continued false designation of origin. These specific provisions are appropriate under the Lanham Act and consistent

16

with the latitude district courts have to craft equitable relief under the Lanham Act. See Harris, 2012 WL 3956801, at *10; see also Coach, 2012 WL 1255276, at *18-19 (describing a detailed injunction issued in a trademark infringement case enjoining a variety of actions).

## CONCLUSION

For the foregoing reasons, the Clerk is directed to enter judgment in favor of the plaintiff and against the Defaulting Defendants as reflected in the Final Default Judgment and Permanent Injunction Order signed simultaneously with this Memorandum Opinion and Order. The plaintiff shall serve this Memorandum Opinion and Order on the Defaulting Defendants and file proof of service on the docket by **February 20, 2024** pursuant to the methods of alternative service authorized by the Court's Temporary Restraining Order, ECF No. 20, and Preliminary Injunction Order, ECF No. 14. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:**   **New York, New York**
            **February 9, 2024**

_____
John G. Koeltl
United States District Judge